UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LEANDREW SARTIN,

             Plaintiff,

    v.                                  Case No. 12-C-0879

SGT. RUSSELL, DONNA SCHROEDER,
OFFICER MEYER, OFFICER GANDER,
OFFICER HENDERIX, and
KELLY A. SALINAS,

             Defendants.

## DECISION AND ORDER DENYING MOTION TO AMEND JUDGMENT

On August 29, 2012, Plaintiff Leandrew Sartin filed four separate suits under 28 U.S.C. § 1983 against six different defendants. Sartin is currently incarcerated at Kettle Moraine Correctional Institution (KMCI), and in his complaints, Sartin alleged a pattern of harassment by various KMCI staff members. In my previous screening orders, the complaint in each case was dismissed without prejudice for failure to state a claim upon which relief may be granted. Thereafter, on September 17, 2012, Sartin filed a motion to consolidate his cases. On October 2, 2012, Sartin filed an amended complaint, separately alleging the facts underlying his claims against each defendant and labeling each claim with the case caption, 12-cv-879. On October 12, 2012, the Court granted Sartin's request to consolidate his cases and ordered that he file an amended complaint within 60 days or face dismissal of his action. The Court explained to Sartin that the amended complaint must be a "stand alone" document that named each defendant and included all allegations needed to state a proper claim against such a defendant so as to provide the defendants

reasonable notice. Plaintiff was warned that his amended complaint may not incorporate any prior pleading by reference.

Sartin failed to file an amended complaint, and accordingly, on December 26, 2012, the action was dismissed with prejudice for failure to state a claim. On January 16, 2013, Sartin filed a motion to amend the judgment dismissing his action, stating he believes his complaints do state a plausible claim entitling him to relief. In his motion, he restates the facts of his claims and refers the Court to his previously-filed complaints. Rather than simply deny his motion as untimely or again grant Sartin an extension of time to re-file an amended complaint as a stand-alone document, I will proceed to address his motion to amend the judgment on the merits, taking into account the numerous complaints and other documents Sartin has filed to date. Also before me now is Sartin's request that the Court amend the filing fee in his case.

I.      **Sartin's Claims**

A.      **Sergeant Russell**

Sartin first alleges that Sgt. Russell has inflicted emotional distress and harmed his reputation by making numerous slanderous and degrading remarks and defaming his character, including calling him a "homosexual" and other derogatory terms. He states that Sgt. Russell has called him such names in front of other inmates, as well in front of "relatives, friends, and coworkers" of Sgt. Russell. As a result of Sgt. Russell's harassment, other inmates constantly tease him and try to start fights with him, and he is worried another inmate will hurt him physically. He also alleges that in October and November 2012, while working in the kitchen at KMCI, he had several verbal altercations with co-workers which he claims stemmed from Sgt. Russell's harassment. Furthermore, he claims that he was singled out and unfairly terminated from his job.

2

Consequently, he claims he has had to seek help from a psychiatrist who has prescribed medication to help Sartin deal with his stress.

### B.    Donna Schroeder, Officer Gander, and Officer Henderix

Sartin next alleges that Donna Schroeder, Officer Gander, and Officer Henderix, "along with other officers of KMCI" harass him because they are "relatives, friends and coworkers" of Sgt. Russell.  In one instance, Sartin states that Schroeder fired him from his job working in the kitchen at KMCI in order to harass him.  Sartin contends while working in the kitchen in January 2012, an inmate co-worker had confronted him and began yelling at him and an argument ensued.  The next day when Sartin returned to work, he was instructed to report to Schroeder, who fired him.  He alleges that he did not violate any procedures and no incident report supported his termination; he also contends that the other inmate who started the argument was not terminated.  He states there was no investigation into the incident and he was terminated for no reason.  For unstated reasons, he believes that his termination was related to the harassment he was receiving from others at KMCI.

Sartin also claims that Schroeder ordered him to tell her personal information, and he implies that she may have used this information to gossip about him in violation of DOC policies and procedures.  He also states he believes that Schroeder's order was part of a plan by unnamed officers to make him hostile toward her or to induce him to refuse to follow her order and as a result, Schroeder and others would have grounds to place him in segregation.

### C.    Officer Meyer

Third, Sartin claims that Officer Meyer harassed him.  Sartin claims that he was placed in segregation on April 25, 2012, and the next day he began suffering from swelling in his thighs.  He

3

was seen by the nurse on April 26 and was given pain relief medication for the swelling in his legs. He claims that between April 26 and May 7, he missed several meals because he could not get up to get his tray of food and segregation rules prevented officers from entering his cell while he was unrestrained. On some of these occasions, he alleges that Officer Meyer harassed him by yelling at him to get up, despite knowing he was unable to walk due to the swelling in his legs. He claims that while some officers put his tray of food on a blanket for him to slide along the floor, Officer Meyer made him get up despite the pain he was in or left without giving him his food. He states Officer Meyer also ordered him to get up and clean his segregation cell, and when he refused, he received conduct reports. He claims Officer Meyer used her authority as an officer to order Sartin to do things she knew he could not do.

In addition, on May 7, 2012, he was able to walk to his segregation hearing and did not "have much pain at all" when moving slowly. However, he alleges Officer Meyer pulled on his arm to make him move faster than he felt capable. As a result, he alleges he fell to the ground, and because he was handcuffed behind his back, he landed on his knees and his legs locked. Officer Meyer yelled at him to get up, believing he was faking. The fall caused him great pain to his knees and legs.

Sartin also alleges that on at least two occasions, officers did not provide him with a wheelchair when he was transported to medical appointments. One such incident occurred on May 11 when he had an appointment with a doctor regarding his knee and leg pain. However, he states he was able to walk and was transported to his appointment, albeit with difficulty. The doctor concluded that his knees were inflamed and would take a month to heal. A July 7, 2012 radiology

4

report concluded that Sartin had mild osteoarthritis in his right knee, but did not have any fracture, dislocation, or joint effusion, and his knee joint was in alignment.

### D.    Kelly A. Salinas

Finally, Sartin alleges that Kelly Salinas, the complaint examiner at KMCI, failed to acknowledge several of his complaints, and simply returned them to Sartin without taking any action.  He claims that the complaints raised issues related to medical treatment and security problems, as well as harassment and mail tampering allegations.  He alleges that Salinas attempted to manipulate the complaint department to her own advantage, and was a part of the group of staff at KMCI that looks out for each other and seeks to harass him.

As a result, Sartin contends the named defendants have violated his Eighth Amendment rights by conduct amounting to cruel and unusual punishment.  The Eighth Amendment, which prohibits "cruel and unusual punishments," imposes a duty on prison officials to ensure that inmates receive adequate food, clothing, shelter, and medical care; prison officials also must take reasonable measures to guarantee an inmate's safety.  *Farmer v. Brennan,* 511 U.S. 825, 832 (1994); *see* U.S. Const. Amend. VIII.  A prison official's "deliberate indifference" to a prisoner's medical needs or to a substantial risk of serious harm to an inmate violates the Eighth Amendment, which is applicable to the states through the Fourteenth Amendment.  *See Farmer,* 511 U.S. at 828; *Estelle v. Gamble,* 429 U.S. 97, 104–105 (1976).

The test for such a violation has two parts.  *Farmer,* 511 U.S. at 834.  First, the deprivation alleged must be "sufficiently serious" when viewed objectively.  *Id.*  The Eighth Amendment guarantees humane prisons, not comfortable ones.  *Id.* at 832.  To be liable, a prison official must deny the "minimal civilized measure of life's necessities" or create "a substantial risk of serious

5

harm." *Id.* at 834. Second, the official must have acted out of "deliberate indifference" to the inmate's health or safety. *Id.* Deliberate indifference requires more than negligence; it requires that the official know of, yet disregard, an excessive risk to the inmate's health or safety. *Id.* at 835, 837. Subjective knowledge of the risk is required: "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* at 838.

Here, plaintiff's allegations, given the most liberal construction, do not rise to a level constituting deliberate indifference to a substantial risk of serious harm. While his allegations have grown in number since his complaints were previously dismissed, they are no more substantial, and do not state a claim that entitles him to relief. Although Sartin feels he has been treated unfairly by Russell, Gander, Henderix, Schroeder, Meyer, and other staff at KMCI, he has not alleged facts indicating they have created any actual risk to his health or safety, that their verbal harassment rises to an actionable level, or that their conduct has been anything more than unsavory, insulting, and inflammatory to Sartin. But while the actions of the KMCI staff may cause Sartin stress, they do not amount to a Constitutional violation. Furthermore, although he states he is fearful that other inmates will injure him or that the officers' comments will incite him to hurt others, Sartin has not indicated these things have actually happened. He has only alleged that he has entered into a few minor altercations with other inmates, resulting in his termination from his kitchen jobs or other discipline at KMCI. Sartin's assertions do not amount to a colorable constitutional claim.

Likewise, Sartin has alleged no physical injury that would constitute cruel and unusual punishment. Although he claims that he suffered some knee and leg pain after Officer Meyer made

6

him walk so fast that he fell to the ground, the doctor's report indicates that he suffers from "mild osteoarthritis" in his right knee, and that he had some swelling and tenderness. Moreover, he has indicated that he promptly received pain medication and saw a nurse when he complained about the swelling in his legs while in segregation. And, although it took several days for him to see a doctor, he was examined and treated. The doctor also suggested a follow-up appointment for x-rays, which Sartin attended without incident. The doctor also prescribed medication, which Sartin indicates he has been taking to help with his knee pain. Nothing in Sartin's complaint supports an inference that he has been denied adequate medical care, and he has alleged no action or inaction on the part of KMCI staff amounting to a violation of the Eighth Amendment.

Finally, as to his allegations regarding his inmate complaints being ignored by Salinas, he has essentially raised the same allegations as he did in his previous complaints, which were dismissed for failure to state a claim. He has only stated that his inmate complaints have been unanswered, but as stated previously, he has provided no indication that he has raised issues of pressing medical needs or a life-threatening situation that has gone ignored. It is not even clear that Salinas has ignored his complaints; rather, it appears that she has simply denied his requests for relief. Thus, based on the facts alleged, he has failed to state a cognizable claim.

## II.    Filing Fee

Finally, Sartin also requests that the court amend the filing fee in his case from $350 to $120. He acknowledges that prisoners are obligated to pay the full filing fee under the Prison Litigation Reform Act (PLRA), but he contends that the filing fee is $120. However, pursuant to 28 U.S.C. § 1914 (2012), "the clerk of each district court shall require the parties instituting any civil action, suit or proceeding . . . to pay a filing fee of $350 . . . ." Therefore, Sartin's request for

7

an amendment of the filing fee in his case will be denied.

**III.    Conclusion**

Accordingly, Sartin has failed to state a claim upon which relief may be granted, and his amended, consolidated complaint is ordered **dismissed with prejudice**.  Sartin has been given several opportunities to present his claims, but he has failed to allege facts sufficient to state a cognizable constitutional claim.  As a result, his request to amend the judgment entered on December 26, 2012 is **DENIED**.  It is further ordered that his request for an amendment of the filing fee in his case is **DENIED**.

Dated this    18th   day of January, 2013.

 s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court

8